**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 07-05058-01-CR-SW-FJG |
| DAVID LORENZO FLETCHER ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized on April 19, 2007, as a result of a vehicular stop, should be suppressed. [Doc. # 21]. The United States filed its response. [Doc. # 23]. The matter was set for an evidentiary hearing, which was held before the undersigned on July 9, 2008. The defendant was present with counsel, Assistant Federal Public Defender Michelle Nahon, and the United States was represented by Steven M. Mohlhenrich, Assistant United States Attorney.

The government's witness, Officer John Mason of the Missouri State Highway Patrol, testified that he was on duty on April 19, 2007. He came into contact with defendant when he observed a vehicle overtaking his patrol vehicle at a high rate of speed. The posted speed limit was 70 miles per hour, and defendant was clocked at 86. Officer Mason activated his emergency lights, and stopped the vehicle. When he approached it, he noticed the driver making several unusual movements. These included refusing to roll down his window, not looking at the officer, and looking towards and moving things around in the passenger's seat. Officer Mason attempted to talk

1

to defendant through the window by raising his voice, and knocking on the window. After about 20 seconds, defendant did open the window, and told the officer that he wasn't speeding. Defendant provided the officer with a rental car agreement, but did not produce any identification until the officer had requested it several times. He eventually thumbed through his wallet, and the officer saw three driver's licenses and two Social Security cards. He asked defendant about the Social Security cards, and defendant stated that one was his, and the other was one he was holding for his cousin, who was incarcerated. Regarding the three driver's licenses, one was a Texas driver's license with a female's photo. The second was from Kansas, and identified defendant as David Lorenzo Fletcher, born February 23, 1966. The third was from Missouri, and identified defendant as David L. Fletcher, born February 24, 1965. The Kansas license had expired. Defendant stated that the information regarding his birth date and year was correct on the Kansas license, and that he'd unsuccessfully tried to correct the Missouri one. Based on the officer's experience, it is not normal to have licenses from different states, and more than one Social Security card. It was the officer's opinion that defendant had these for fraudulent purposes, and that he had probable cause to arrest him. At that time, defendant became more visibly nervous, as he was shaking, and breathing in loud, rapid breaths. The officer asked him to step outside the vehicle, but defendant appeared to be preoccupied with something inside the vehicle on the passenger's side before he did exit it. Then, for the officer's own safety, he advised defendant that he was going to pat down his person. Defendant was cooperative until the officer reached toward his left rear pants pocket. At that point, defendant began to resist, and tried to pull away from the officer. Officer Mason took his arm to control him, and ran his hand across the pocket. He felt what appeared to be a stack of credit cards. He believed this was more evidence of a crime, based on his observations

2

thus far, and thought that there were fraudulently obtained credit cards or illegal credit cards in the pocket. The officer reached into the pocket and retrieved what turned out to be nine fake Missouri driver's licenses with defendant's picture and the name and information for nine different people listed on the licenses. Officer Mason testified that when he was patting down defendant and felt the large number of what appeared to be credit cards in his back pocket, he'd already seen him with a wallet. Based on his experience, he had never seen someone carry a wallet and have a pocketful of credit cards.

At that point, Officer Mason immediately placed defendant under arrest, handcuffed him, read him his <u>Miranda</u> rights, and placed him in the front seat of the patrol car. Defendant told him he could not put him under arrest for the false identification cards, and that he should write him a ticket and let him go. The officer then returned to defendant's vehicle, and saw a large amount of cash scattered around the area of the driver's seat and on the floor, from his perspective outside the vehicle. When a defendant is placed under arrest, the officer testified that it is normal procedure to go back to the vehicle, and to check the VIN number to ensure that it is not stolen. He had a flashlight to check the VIN number by looking into the vehicle from the front, and he could easily observe the cash scattered inside. Then, he opened the driver's side door, collected the money, and observed a payroll check issued to Chris Chapman on the visor. He then looked around on the passenger seat, where he saw another driver's license in the name of Chris Chapman and two other counterfeit checks. A total of $3909 was taken from the vehicle, with about 90% of that scattered around the front seat. In his 11 years of law enforcement experience, he'd never seen that before. He then went to the trunk, opened it, and observed, among other things, printing equipment, laptop computers, 50 more fake Missouri ID cards, hundreds of pages of blank checks, pedigrees of

3

hundreds of individuals, and photo identification makers. The officer then returned to the patrol vehicle, and spoke to defendant. He stated that he sells the ID cards, more for comedy than anything, and makes money off of them. Officer Mason ran the Missouri driver's license that defendant provided, and it did come back as valid, although at that point the officer just knew it was a valid license for someone. Based on the various names he had found on the licenses, the officer had no idea who he had actually stopped. That was one of the reasons that he had earlier decided to place defendant in custody.

On cross examination, Officer Mason acknowledged that his report never said that he had probable cause to arrest defendant. In his report, as a basis for patting him down, he said it was for his safety and based on defendant's unusual behavior. At the beginning of his report, it states that he asked defendant for identification. Defendant then started looking through his wallet, and the officer admitted that he saw this and ordered him to give him the three driver's licenses and the Social Security cards. Regarding his report, the initial report was started the night of the incident, with more information added as he conducted interviews with victims over the next couple of weeks. The officer acknowledged that the Missouri license was actually a valid driver's license. He admitted that it's not unusual for an individual to move and get a new license. When he ran the Kansas license, it was valid, but expired. The officer admitted that defendant did tell him that one of the Social Security cards was his cousin's. He also acknowledged that the names on the licenses were essentially the same, and that the dates of birth were a day and a year apart. He admitted that he'd known the state to make mistakes like this. Officer Mason testified that he believed at the time of the stop that he had probable cause to arrest defendant. The officer also acknowledged that the Kansas document was an identification card, and not a driver's license.

4

Regarding probable cause, the officer stated that he felt there was probable cause because of the three driver's licenses, the dates of birth being different on two, and defendant's possession of two Social Security cards. He acknowledged that he did not run any records checks before he had defendant step out of the vehicle. The officer admitted it is not uncommon to be nervous when the police stop you.

On redirect examination, Officer Mason stated that although it is not uncommon for a defendant to be nervous, in this case, defendant was visibly shaking, taking short, rapid breaths, and then started breathing harder as the stop progressed.

It is defendant's contention that the officer acted outside the lawful bounds of Terry v. Ohio, 392 U.S. 1 (1968), when he reached into defendant's pocket and pulled out what he believed to be a large stack of credit cards. He asserts that the scope of a pat-down search is strictly limited to determining whether a person is armed and presently dangerous to the officer, and that "[i]f the incriminating character of the item is not immediately apparent to the officer, the officer may not seize it." [Defendant's Motion, at 21, citing Minnesota v. Dickerson, 508 U.S. 366, 379 (1993); United States v. Hughes, 15 F.3d 798 (8th Cir. 1994)]. Defendant does not challenge the right to conduct a pat-down search, but objects to Officer Mason taking control of defendant, reaching into his pocket, and pulling out what he believed to be a large stack of credit cards. Defendant submits that unlike weapons or illegal drugs, credit cards do not have an "incriminating character, which is "immediately apparent." [Defendant's Motion at 5].

Defendant also reiterated at the hearing that there was not probable cause at the time of arrest that a crime was being committed. Had the officer run the Missouri license, he would have learned it was valid. He contends that had the officer felt a gun, or a baggie of marijuana, it would

5

be a different case, because such items are inherently dangerous or inherently incriminating. Defendant contends that the cases cited by the government are not applicable because the issues are not the same, nor are the facts. It is also defendant's position that, even if there was probable cause, there were also no exigent circumstances. Because the seizure of the nine false driver's licenses should be suppressed, all evidence found and statements made should also be suppressed. Defendant also contends that the officer's memory should have been better at the time of the report, and that

In its response, the government contends that because defendant had presented two driver's licenses from different states listing different dates and years of birth, and two Social Security cards at the time of the stop, the officer had probable cause to believe that either one or both of the licenses were counterfeit or fraudulently obtained or that defendant had committed identify theft or was trafficking in stolen identities. Additionally, the government contends that because defendant possessed a fictitious driver's license and the officer could not identify him at the scene, the officer had already decided to arrest him and transport him for processing and positive identification. Because of these facts and circumstances, when the officer conducted the pat-down search of defendant and felt what he believed to be a large stack of credit cards, he believed it was probable that these would constitute evidence of a crime; and because of these facts and circumstances, when defendant stepped out of the vehicle, the officer believed it probable that evidence of a crime would be found inside the vehicle. The government contends that defendant is in error when he argues that he was only being detained temporarily for investigatory purposes, and that the officer's actions exceeded the scope of an investigatory <u>Terry</u> stop. Rather, it is asserted that when defendant exited his vehicle, Officer Mason already had probable cause to believe that he had committed a crime

6

subjecting him to arrest. Under Eighth Circuit law, this was a lawful search incident to arrest, and the evidence inevitably would have been discovered during an inventory search pursuant to the arrest. Further, the government contends that when Officer Mason felt what he believed to be a large stack of credit cards in defendant's pocket, he also had probable cause to believe that further evidence of a crime would be found on defendant's person, and in his vehicle.

Alternatively, the government contends that independently of the arrest of defendant, Officer Mason had both probable cause to retrieve the cards from defendant's pants pocket, and to search the passenger department of the vehicle, and was justified in doing both because of exigent circumstances, under the automobile exception to the warrant requirement. This argument is based on the information acquired about the licenses and Social Security cards, as well as defendant's behavior in that he was exceptionally nervous, tried to rearrange items on the passenger's seat, initially refused to respond to the officer's knocks on the car window, and looked back towards the front passenger seat as he exited the vehicle.

At the hearing, the government argued that even marijuana does not have an inherently incriminating nature if it's felt in someone's pocket. Rather, based on an officer's training and experience, and the facts and circumstances of the case, the officer makes a determination as he's patting down an individual. Further, the government reiterates that defendant was trying to pull away from Officer Mason when he reached towards his back pocket, which lead the officer to believe that there was evidence of a crime in his pocket. It is also the government's position that there was an additional ground for inevitable discovery, because of the cash that was strewn about the driver's side of the vehicle, which was immediately obvious when the officer checked on the VIN number, according to his standard practice. This would have provided probable cause for the

7

arrest and seizure of all the evidence.

As recently stated by the Eighth Circuit Court of Appeals, probable cause is the "fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Donnelly, 475 F.3d 946, 954 (8th Cir.), cert. denied, —U.S.—, 127 S.Ct. 2954 (2007). In order to determine if probable cause exists, the totality of the circumstances must be assessed using a "common sense approach." United States v. Valle Cruz, 452 F.3d 698, 703 (8th Cir. 2006).

The warrantless search of defendant at the time of his arrest, during which search the credit cards were found, was valid only if it was a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 763 (1969). "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). The Robinson Court further held that "[t]he authority to search the person incident to a lawful custodial arrest . . . does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." Id. at 235; see United States v. Lewis, 183 F.3d 791, 794 (8th Cir. 1999). Rather, it is the fact of the lawful arrest that establishes an officer's authority to search. Robinson, 414 U.S. at 235. Additionally, a search incident to an arrest conducted immediately before formal arrest is valid if probable cause to arrest existed prior to the search. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980).

Based on a full review of the record and the positions of the parties, the Court finds that this was not a non-arrest pat-down search for weapons and officer security, which would be within the permissible scope of Terry. Rather, under the facts and circumstances of this case, the officer had

8

probable cause to believe that defendant had committed a crime at the time he exited the vehicle. The fact that the search occurred prior to his formal arrest does not render the search invalid, given that probable cause existed prior to the search.  Id. at 111.  Therefore, this was a lawful search incident to arrest.

The Court finds that, under the totality of the circumstances of this case, Officer Mason had probable cause to search defendant's person, including patting him down, and then reaching inside his back pants pocket to retrieve what he believed to be a stack of credit cards, as a search incident to arrest.  Given what the officer knew at the time, based on his experience and the information he acquired after stopping defendant, there was a fair probability that evidence of a further crime would be found in defendant's pocket.  While a stack of credit cards might not be inherently incriminating in a different case, it was in the case at bar.    At the point of the pat down, the officer knew that defendant was in possession of a wallet, which contained three identification cards, two of which were issued in his name (although his name was listed differently), with different birth dates, and from different states, as well as two Social Security cards.  The officer testified that it was his belief that defendant had committed crimes, either through possessing counterfeit or fraudulently obtained licenses, or through identity theft.  The government notes that being in possession of a fictitious license or to represent as one's own a license not issued to the person who displays it, or using a false or fictitious license, is a violation of Missouri law.  Mo. Rev. Stat. § 302.220.  Further, identity theft is prohibited under state law.  Mo. Rev. Stat. § 570.223, et seq.  It is also clear that being in possession of the Social Security card of another may facilitate identity theft, given that a Social Security card is often required as proof of identity.  Therefore, given that Officer Mason had readily observed defendant to be in possession of items that could constitute evidence of a crime, the Court

9

finds that he had probable cause to arrest defendant at the time he exited the vehicle. When the officer felt what appeared to be a stack of credit cards during the lawful pat-down search, he had enough information to believe there was a fair probability that these cards would be further evidence of fraudulent activity on the part of defendant, based on what he had already observed. The fact that defendant carried a wallet, which contained what appeared to be counterfeit or fictitious driver's license, led the officer to believe that there was a fair probability that a stack of cards, credit or otherwise, in his pocket would constitute evidence of a crime. Additionally, the officer perceived defendant to be exceptionally nervous, and to become more so during the stop; to be non-cooperative when first approached; to have had an unusual preoccupation with something in the vehicle; and to have been reluctant to provide identification, as well as reluctant to exit the vehicle. At the time the officer patted him down, defendant became very resistant to the officer touching the outside of his back pants pocket, to the extent that the officer had to hold his arm to control him and allow the pat down to proceed. The Court finds that there was not a Fourth Amendment violation in this case based on the search of defendant's pocket, because the facts known to the officer created probable cause that defendant had committed a crime at the time he exited the vehicle, and that evidence of a further crime would be found during the search incident to his arrest.

Likewise, there was no Fourth Amendment violation regarding the search of the vehicle. The officer testified that after he had seized the contents of defendant's pocket, he returned to defendant's vehicle to determine the VIN number and ensure that it was not stolen. During the course of viewing the number, he readily saw a large amount of cash strewn around the front of the vehicle. Once inside the vehicle, he found additional credit cards, and payroll checks issued to someone other than defendant. Inside the trunk, he observed a host of articles to be used for the

10

production of fraudulent identification cards. That search was lawful both as a search incident to defendant's arrest, as well as a lawful inventory search of the vehicle.

Accordingly, it will be recommended that defendants' Motion to Suppress Evidence be denied.[1]

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence should be denied.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 07/17/08

---

[1] Regarding the Eighth Circuit cases relied on by the government, United States v. Marion, 238 F.3d 965, 967 (2001), and United States v. Glenn, 152 F.3d 1047, 1049 (1998), defendant argues that these cases are inapposite, because the facts and the issues are not the same. The Court has reviewed those cases, and agrees that Eighth Circuit's ruling in Marion is not applicable to the instant case, given that the issue before the Court was whether the Leon good faith exception applied, and the discussion of the history of the case had no bearing on the Court's ruling. In the case of Glenn, on the issue of the inevitable discovery doctrine, the Court finds that case supports the contention that the evidence would have been inevitably discovered during a search incident to arrest, even if the search was not justified at the time. Glenn, 152 F.3d at 1049-50. It should be noted that case law, as enunciated herein, supports this Court's recommendation on the basis that the search of defendant's person, conducted prior to a formal arrest, was a valid search incident, because there was probable cause to make the arrest. See Rawlings, 448 U.S. at 111.

11

Case 3:07-cr-05058-DGK   Document 30   Filed 07/17/08   Page 11 of 11